UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.E.,[1]<br>Petitioner,<br>v.<br>TONYA ANDREWS et al.,<br>Respondents. | No. 1:26-cv-07146-TLN-SCR<br>A# 241-344-308<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner O.E.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an opposition. (ECF No. 7.) Petitioner filed a reply. (ECF No. 8.) For the reasons set forth below, the Court GRANTS the petition. (ECF No. 1.) Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

///

///

[1] The Court previously granted Petitioner's motion to proceed under a pseudonym. (ECF Nos. 2, 5.)

## I. Factual and Procedural Background

Petitioner is a noncitizen who fled his native country following a change in government and entered the United States in November 2023. (ECF No. 1-1 at 2–3.) He was encountered by immigration authorities who released him under an Order of Release on Recognizance ("OREC") on November 15, 2023. (*Id.*; ECF No. 1-2 at 5.) Petitioner's father obtained refugee status and became a lawful permanent resident in July 2023. (ECF No. 1 at 8; ECF No. 1-2 at 2–3.) Petitioner's brother obtained lawful permanent resident status in April 2024 through the Special Immigrant Visa Program due to his work for the United States government in his native country. (ECF No. 1 at 8; ECF No. 1-2 at 2–3.) Petitioner's father also filed an application for asylum which remains pending. (ECF No. 1-2 at 7–8.) On April 24, 2024, Petitioner applied for asylum. (ECF No. 1-1 at 3; ECF No. 1-2 at 10.) Petitioner fears that if he were to be returned to his country of origin the new government would torture or kill him in retaliation for his work with the government of the United States. (ECF No. 9-1 at 2.) Since his original release from immigration custody, Petitioner has supported his father who is elderly and suffers from health issues. (ECF No. 1-1 at 3.)

On August 6, 2026, local authorities arrested Petitioner following a domestic dispute on suspicion of having committed misdemeanor domestic battery. (ECF No. 1 at 9; ECF No. 1-2 at 124.) Petitioner was released on $5,000 bond a few hours later.[2] (ECF No. 1 at 9.) Immigration and Customs Enforcement ("ICE") arrested Petitioner at a check-in meeting on August 10, 2026.[3] (ECF No. 1 at 9.) He was transferred to the Golden State Annex Detention Facility, where he remains detained. (ECF No. 1 at 4, 9.) On August 20, 2026, the Sacramento County District Attorney's Office declined to file charges against Petitioner. (ECF No. 1-2 at 102.) Petitioner received a bond hearing in immigration court on August 31, 2026, at which the immigration judge

---

[2] Petitioner submits a declaration from his fiancé who describes calling the police after an argument and alleging that Petitioner "pushed [her] hand." (ECF No. 9-4 at 2.)

[3] The government's records state that Petitioner was "instructed to" appear at this meeting by his case officer. (ECF No. 1-2 at 116.) Petitioner disputes this characterization and argues that he "reported voluntarily." (ECF No. 1-1 at 5 n.2.) For the reasons explained below, this dispute is immaterial to the Court's analysis.

("IJ") denied bond. (ECF No. 1-2 at 127.)

On September 5, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his detention. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues that his re-detention without a pre-deprivation hearing violates the Fifth Amendment Due Process Clause, and that the IJ abused her discretion in denying bond.[4] (ECF No. 1 at 11–43.) Respondents contend: (1) Petitioner should be required to exhaust his administrative remedies; (2) Petitioner is mounting an improper facial challenge to 8 U.S.C. § 1226(a); and (3) the statute is constitutional as applied to Petitioner. (ECF No. 7 at 1–7.)

### A. Prudential Exhaustion

Respondents argue Petitioner should be required to exhaust administrative remedies before pursuing habeas relief. (ECF No. 7 at 2–4.)

Courts may require prudential exhaustion when:

---

[4] Petitioner also argues that his detention violates his substantive due process rights. (ECF No. 1 at 24–25, 42.) Finding relief warranted on his procedural due process claim, the Court declines to address this additional claim in favor of judicial economy.

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983).

First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's claim that his detention does not comport with due process because the Court is in possession of all evidence necessary to resolve this claim, including a full transcript of the bond proceedings. (ECF No. 1-2 at 130–133.)[5] Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Third, there is no reason to delay for the possibility that the Board of Immigration Appeals ("BIA") may correct any mistakes in the IJ's decision. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."). Additionally, because Petitioner is currently detained by the government, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

B. <u>Fifth Amendment Due Process Challenge to Bond Proceedings</u>

Petitioner claims that the bond proceedings violated the Fifth Amendment Due Process Clause because the IJ failed to explain the reasons for her findings and did not allow him to present evidence or testimony or conduct cross-examination of the government's evidence.[6]

---

[5] Petitioner relies upon an informal transcript of the bond proceedings. In the absence of a challenge to the authenticity of the document from Respondents (*see generally* ECF No. 7) the Court accepts counsel's declaration authenticating it. Fed. R. Evid. 901(b)(1) ("Testimony that an item is what it is claimed to be" can be sufficient for authentication).

[6] Petitioner also argues that the IJ abused her discretion by failing to consider probative

(ECF No. 1 at 11–43.) Respondents argue the procedures authorized by 8 U.S.C. § 1226(a) have been upheld as facially constitutional, and they are constitutional as applied to Petitioner because he was denied bond after a full and fair hearing. (ECF No. 7 at 1–7.)[7]

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As to the first step, the Court finds Petitioner has a clear liberty interest protected by the Fifth Amendment. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693. Respondents do not dispute that Petitioner has a protected liberty interest. (*See generally* ECF No. 7.)

---

evidence and not requiring the government to justify Petitioner's detention by clear and convincing evidence. (ECF No. 1 at 25–34.) Finding relief warranted on the ground that the IJ did not explain the reasoning for her decision, the Court declines to address these additional arguments.

[7] Respondents also oppose Petitioner's claims of bias in the immigration court system, which Petitioner raised in support of his request that the Court, if it declines to order immediate release, should hold a further bond hearing itself. (ECF No. 1 at 34–41; ECF No. 7 at 6–7.) Because the Court finds that the appropriate remedy is release, it declines to address these contentions by the parties.

Additionally, the government's decision to release Petitioner on an OREC and allow him to remain in the community for nearly three years created a powerful liberty interest. (ECF No. 1 at 2.) *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*ii. Process Provided*

As to the second step — the process owed to Petitioner — the parties agree Petitioner was owed a bond hearing. (ECF No. 1 at 12–24 (arguing Petitioner was entitled to a pre-deprivation hearing); ECF No. 7 at 1 (conceding that "Petitioner is bond-eligible").) Petitioner appears to dispute whether 8 U.S.C. § 1226(a) ("§ 1226(a)") applies to him because he was released on an OREC. (ECF No. 8 at 5–6.) The Court finds that § 1226(a) and its procedural protections apply, including the bond hearing requirement. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226, provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (concluding that noncitizen released on an Order of Release on Recognizance was detained pursuant to § 1226(a)).

The Court finds Petitioner was owed a pre-deprivation hearing prior to revocation of his OREC. The post-deprivation hearing Petitioner was provided did not cure this violation of Petitioner's procedural due process rights because it was constitutionally infirm. *See Charan S. v. Warden of the California City Det. Facility*, No. 1:26-cv-03017-TLN-JDP, 2026 WL 1144158, at *4–7 (E.D. Cal. Apr. 28, 2026) (finding petitioner who had previously been released by the government was owed a pre-deprivation hearing and the district court-ordered post-deprivation bond hearing did not cure the violation).

At a § 1226(a) bond hearing, an IJ must determine whether a noncitizen is a danger to the community or a flight risk. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (setting forth the nine factors for examination). Otherwise, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be

reasonably ensured by . . . bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez*, 124 F.4th at 784–85. However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011). Under an abuse of discretion standard, the Court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785. (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

At Petitioner's bond hearing, the IJ heard argument from Petitioner's counsel and the Department of Homeland Security for approximately five and a half minutes, then ruled as follows: "All right. I am exercising discretion to not hear witness testimony. Particularly in a [Immigration and Nationality Act §] 236A bond hearing, I am determining that [Petitioner] has not met his burden with regards to danger or flight in this case. I have concerns to both. I am denying [Petitioner's] request for [bond re-] determination. Appeal is deemed reserved. The appeal deadline is September 30, 2026." (ECF No. 1-2 at 130–133.) The IJ did not provide any other explanation during the hearing for the danger and flight risk findings. The IJ's written order states as follows:

> [Petitioner] is both a danger and a flight risk.
>
> Should [Petitioner] appeal the Court's custody redetermination decision to the Board of Immigration Appeals (Board), this Court will provide a memorandum to facilitate review of [Petitioner's] appeal. See Immigration Comi Practice Manual, Chap. 9.3(e)(7).

(*Id.* at 127.)

An IJ abuses their discretion when they fail to explain the reasoning for their findings.

*See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.")) (citation modified); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain [ their] reasoning")).

Without any meaningful explanation of the IJ's reasoning for denying Petitioner bond, Petitioner has not been provided adequate due process to ensure the deprivation of his liberty is justified. Respondents provide no further explanation or defense of the IJ's ruling. The Court is left to guess why the record purportedly demonstrated that Petitioner was a flight risk. This constitutes an abuse of discretion. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.").

The Court thus finds the risk that Petitioner has been erroneously deprived of his liberty is high, and the government has no legitimate interest in depriving Petitioner of constitutionally sufficient process. *Mathews v. Eldridge*, 424 U.S. 319, 343–48 (1976).

Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner O.E. (A# 241-344-308) from custody on the same conditions of his prior release. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall not impose any

additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. Respondents shall file a **notice of compliance** with this provision of the Court's Order within **two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's Motion for TRO is DENIED as moot. (ECF No. 3.)

4. **The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE